IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| TIMOTHY D. POPE, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| JOHNNY REYNOLDS, et al., | ) | |
| | ) | |
| Plaintiff-Intervenors, | ) | |
| | ) | |
| EUGENE CRUM, JR., et al., | ) | |
| | ) | |
| Plaintiff-Intervenors, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:68cv2709-T |
| TOMMY G. FLOWERS, et al., | ) | (WO) |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ALABAMA STATE CONFERENCE | ) | |
| OF NAACP BRANCHES, | ) | |
| | ) | |
| Amicus Curiae. | ) | |

ORDER

This litigation, <u>United States v. Flowers</u>, civil action

no. 2:68cv2709-T (previously styled <u>United States v. Frazer</u>,

and still frequently known today as '__Frazer__' or the '__Frazer__ litigation'), is before the court on the difficult issue of what discovery, if any, the court should allow before it decides whether __Frazer__'s 35-year-old 'no-bypass rule' should be terminated.

I.

Paragraph 3 of § II of the 1970 injunction in __Frazer__ provides as follows:

> "Defendants shall not appoint or offer a position to a lower-ranking white applicant on a certificate in preference to a higher-ranking available Negro applicant, unless the defendants have first contacted and interviewed the higher-ranking Negro applicant and have determined that the Negro applicant cannot perform the functions of the position, is otherwise unfit for it, or is unavailable. In every instance where a determination is made that the Negro applicant is unfit or unavailable, documentary evidence shall be maintained by the defendants that will sustain that finding."

__United States v. Frazer__, 317 F.Supp. 1079, 1091 (M.D. Ala. 1970).  This provision, which embodies what is now called

the no-bypass rule, prohibits Alabama state officials from bypassing a higher-ranked African-American applicant in favor of a lower-ranked white applicant on a certificate of eligibles.  The rule was imposed in response to evidence that, up until 1970, the State of Alabama was unabashedly refusing to hire and promote African-Americans to almost any and all non-menial positions in state government because of their race.

On May 20, 2003, plaintiff United States of America was joined by the defendants, who are officials of the State of Alabama, in filing a motion to terminate the no-bypass rule. This court granted permissive intervention to representatives of African-American employees of the State of the State of Alabama, and to Timothy Pope, a white employee of the Alabama Department of Corrections who says he was denied a promotion because of the no-bypass rule.  On January 28, 2004, Pope joined the United States and the state defendants in their termination motion.

This court instructed the parties to agree on a discovery plan, but they could not do so.  The United States, the state defendants, and Pope argued that discovery should be limited to an analysis of the data underlying the statistical report that the original parties had submitted, which purports to show that the no-bypass rule is no longer necessary.  The African-American intervenors wanted discovery to be much broader, encompassing information about specific instances of alleged discrimination across the State government; they argued that the question of whether the no-bypass rule was still necessary could require an agency-by-agency or classification-by-classification analysis.

This court initially approved the more limited proposed discovery plan of the United States, the defendants, and Pope.  However, the court left open the possibility that it would allow more discovery after reviewing the African-American intervenors' rebuttal report.

II.

The discovery dispute presented to the court is difficult because the court is confronted with two serious and competing concerns.  On the one hand, the court is very reluctant to foreclose further discovery by the African-American intervenors, for the court would be essentially ruling on the merits of the issue presented without having given all interested parties an opportunity to develop their case.  Further discovery and court action is warranted on, at least, the important issues presented pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2789 (1993).

On the other hand, the court is confronted with the following reality: First,  the no-bypass rule is a race-conscious provision and as such, must meet 'strict scrutiny' standards and must be 'narrowly tailored,' <u>Adarand Constructors, Inc. V. Pena</u>, 515 U.S. 200, 115 S.Ct. 2097 (1995); if logic and common sense are to apply, the no-bypass rule cannot be both narrowly tailored and

everlasting. Second, the rule has been in effect for approximately 35 years without an independent court review to determine if it continues to meet legal requirements. Because the rule cannot be everlasting, this circumstance is impermissible; in other words, the rule simply cannot continue without a court finding that it continues to meet the demanding requirements for race-conscious relief. Third and finally, the evidentiary record submitted by United States and state defendants shows a strong likelihood that, when all is said and done, the rule cannot continue. Although the court recognizes that the African-American intervenors maintain that Alabama has not progressed enough to warrant the rule's termination, it cannot be discounted that the racial make-up of Alabama's government is dramatically different from what it was in 1970, when the no-bypass rule was imposed.

In resolving these competing concerns, the court concludes that it should be guided by the standards developed for issuing a preliminary injunction. Generally,

a preliminary injunction should be entered if the movant clearly establishes that (1) there is a substantial likelihood of success on the merits, (2) irreparable injury will be suffered unless the injunction issues, (3) threatened injury to the movant outweighs whatever damage proposed injunction may cause the opposing party, and (4) the injunction, if issued, would not be adverse to the public interest.  <u>McDonalds Corp. v. Robertson</u>, 147 F.3d 1301, 1307 (11th Cir. 1998).  "Ordinarily the first factor is most important."  <u>Garcia-Mir v. Mease</u>, 781 F.2d 1450, 1453 (11th Cir. 1986).  This court believes that, with these standards tailored to the circumstances of this case, the United States, the state defendants, and Pope have met them.

As indicated above, there is not only a likelihood, but a strong likelihood, that the United States, the state defendants, and Pope will prevail on the merits of their motions.  In light of the substantial positive change in the racial makeup of the government of the State of Alabama after the uninterrupted implementation of the no-bypass rule

7

for 35 years, the court believes that the record strongly suggests that, on balance, the African-American intervenors will not suffer substantial harm from the mere temporary cessation of the no-bypass rule pending the resolution of the pending substantive motions.  And in light of the Supreme Court's strong mandate that all race-conscious relief must be narrowly tailored, the court further believes that the record strongly suggests that the continued implementation of the no-bypass rule would cause irreparable injury to all state employees and applicants for state jobs, and thus would be against the public interest, in the absence of an independent and compelling finding by the court that such race-conscious relief is still warranted after having been implemented for over a third of a century.

The court, however, recognizes that the African-American intervenors believe that the State has not progressed enough and, in fact, there may be evidence that some state officials have intentionally used devices (such a manipulation of registers and giving everyone the same

8

score) so as to circumvent the no-bypass rule.  But the important question is whether the picture of race-relations in the government of the State of Alabama has reached the critical point where claims of race discrimination can be adequately addressed through traditional federal remedies, such as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17, and the Civil Rights Act of 1866, 42 U.S.C.A. § 1981; the current record strongly suggests that that picture, albeit perhaps a very imperfect one, has reached that point.

This court therefore tentatively concludes that it should <u>preliminarily</u> and <u>immediately</u> discontinue the no-bypass rule.  However, because the court's approach in this case has not been informed by the parties (in particular, the African-American intervenors), the court will not make a final decision on whether the no-bypass rule should be suspended without hearing first from all concerned.

**Accordingly, it is ORDERED that all parties show cause, if any there be, in writing by no later than May 9, 2005, as to the following:**

(1) **Why plaintiff United States of America and the state defendants' joint motion to terminate the no-bypass rule (Doc. No. 634) and plaintiff-intervenor Timothy Pope's motion to modify injunction as to the no-bypass rule (Doc. No. 659) should not be treated as also requests for preliminary relief; and**

(2) **Why said requests for preliminary relief should not be granted as outlined in this order.**

**It is further ORDERED that, by no later than May 20, 2005, the court will resolve whether preliminary relief should be granted.**

**In a companion order entered today the court addresses what discovery is allowed on plaintiff United States of America and the state defendants' joint motion to terminate the no-bypass rule (Doc. No. 634) and on plaintiff-**

intervenor Pope's motion to modify injunction as to the no-bypass rule (Doc. No. 659).

DONE, this the 29th day of April, 2005.

 /s/ Myron H. Thompson  
 **UNITED STATES DISTRICT JUDGE**