IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| TIMOTHY D. POPE, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| JOHNNY REYNOLDS, et al., | ) | |
| | ) | |
| Plaintiff-Intervenors, | ) | |
| | ) | |
| EUGENE CRUM, JR., et al., | ) | |
| | ) | |
| Plaintiff-Intervenors, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:68cv2709-MHT |
| | ) | (WO) |
| TOMMY G. FLOWERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ALABAMA STATE CONFERENCE OF NAACP BRANCHES, | ) | |
| | ) | |
| Amicus Curiae. | ) | |

OPINION

The issue before the court is whether, after approximately a third of a century, the court-imposed no-bypass rule should be terminated. In general, the rule prohibits Alabama state officials from bypassing a higher-ranked African-American applicant in favor of a lower-ranked white applicant on a certificate of eligibles. Because there are no disputed issues of material fact, <u>see</u> Fed.R.Civ.P. 56, and for the reasons given below, the court concludes that a summary judgment terminating the rule should be entered.

On May 20, 2003, plaintiff United States of America was joined by the defendants, who are officials of the State of Alabama, in filing a motion to terminate the no-bypass rule. This court granted permissive intervention to representatives of two groups of African-American employees of the State of Alabama, and to Timothy Pope, a white employee of the Alabama Department of Corrections who says he was denied a promotion because of the no-bypass rule. On January 28, 2004, Pope joined the United States and the state defendants in their

2

termination motion. Previously, on May 20, 2005, the court suspended, as opposed to terminated, the rule so as to allow the African-Americans intervenors to complete discovery on the issue. United States v. Flowers, 372 F.Supp.2d 1319 (M.D. Ala. 2005) (Thompson, J.).

Now that all relevant evidence has been presented, the court finds that the requirements of Rule 60(b) of the Federal Rules of Civil Procedure and Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992), have been met, that is, there has been a "significant change in [factual] circumstances" and termination of the no-bypass rule is "suitably tailored" to these changed circumstances. Id. at 383. As this court has stated, the no-bypass rule was "imposed in response to evidence that, up until 1970, the State of Alabama was unabashedly refusing to hire and promote African-Americans to almost any and all non-menial positions in state government because of their race." Flowers, 372 F.Supp.2d at 1323. The rule was part of an extensive remedial order to redress this discrimination.

3

In contrast, the current record reflects "that the racial make-up of Alabama's government is dramatically different from what it was in 1970, when the no-bypass rule was imposed." Id. at 1324.  More specifically, and for example, the percentage of African-Americans in 2003 in the state workforce rose to 39; while, at the same time, between 1983 and 2003, the percentage of African-Americans in the lowest pay-grade groups decreased from 48 (as opposed to 23 for whites) to 11 (as opposed to 8 for whites), and, in general, there was a substantial redistribution of African-Americans into jobs categories with higher, and even the highest, earning potential. Thus, all experts agree "that the percentage of African American employees in the State of Alabama workforce has increased from 1970 to 2003 and that the distribution of these employees has changed from lower skilled positions to higher skilled positions, and consequently, higher paying, ... categories."[1]

---

1. African-Americans intervenors' brief (Doc. No. 737), at 13 (citations and quotation marks omitted).

4

To be sure, as the African-American intervenors observe, the evidence also reflects that African-Americans have still not achieved parity with whites in the overall state workforce and in certain parts of that workforce. However, the intent of the no-bypass rule was not to achieve racial parity, see Ensley Branch, N.A.A.C.P. v. Seibels, 31 F.3d 1548 (11th Cir. 1994) ("The Constitution does not guarantee racial parity in public employment"); rather, it was to help in redressing the State's across-the-board discrimination in employment, including specifically the State's intentional bypassing of higher-ranked African-American applicants in favor of a lower-ranked white applicants so as to limit African-American to menial jobs.  The intent was to knock down the State's wall of racial discrimination.

The African-American intervenors also note that their statistical evidence suggests that there may still be discriminatory practices in other aspects of the State's selection process and even in some state agencies; this evidence further suggests significant pay disparities

between African-American and whites within some job categories. "[T]he no-bypass rule is a race-conscious provision and, as such, must meet 'strict scrutiny' standards and must be 'narrowly tailored,' Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995)." Flowers, 372 F.Supp.2d at 1323. The across-the-board rule, while narrowly tailored when imposed to redress the State's across-the-board discrimination at that time, is no longer narrowly tailored to redress the specific types of alleged racially discriminatory practices identified by the African-American intervenors today. Those alleged practices may still need fixing, but the no-bypass rule is no longer one of the appropriate tools; there is no longer a fit between the alleged practices and the rule.[2]

---

2. Indeed, it is arguable that the African-American intervenors may have overstated their case. Their evidence suggests that some of the alleged practices and disparities they identify have remained and continued unallayed at all by the no-bypass rule, thereby suggesting the rule has been ineffective as to these practices and disparities. Therefore, to the extent these alleged practices and disparities need a remedy,
(continued...)

6

An appropriate judgment will be entered.

DONE, this the 30th day of June, 2006.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

---

2.  (...continued)
they need a new one more tailored to them than the no-bypass rule.