IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| TIMOTHY D. POPE, ) | |
| ) | |
|     Plaintiff-Intervenor, ) | |
| ) | |
| JOHNNY REYNOLDS, et al., ) | |
| ) | |
|     Plaintiff-Intervenors, ) | |
| ) | |
| EUGENE CRUM, JR., et al., ) | |
| ) | |
|     Plaintiff-Intervenors, ) | |
| ) | CIVIL ACTION NO. |
|     v. ) | 2:68cv2709-MHT |
| ) | (WO) |
| TOMMY G. FLOWERS, et al., ) | |
| ) | |
|     Defendants. ) | |
| ) | |
| ALABAMA STATE CONFERENCE ) | |
| OF NAACP BRANCHES, ) | |
| ) | |
|     Amicus Curiae. ) | |


OPINION AND ORDER

Previously, the court terminated the judicially

imposed no-bypass rule, which, in general, had since 1970

prohibited Alabama state officials from by-passing a higher-ranked African-American applicant in favor of a lower-ranked white applicant on a certificate of eligibles. <u>United States v. Flowers (Flowers II)</u>, 444 F. Supp.2d 1192 (M.D. Ala. 2006) (Thompson, J.); <u>United States v. Flowers (Flowers I)</u>, 372 F. Supp. 2d 1319 (M.D. Ala. 2005) (Thompson, J.).  This long-standing litigation, brought by plaintiff United States of America and naming several officials of the State of Alabama as defendants, is again before the court, this time on motions for attorneys' fees and expenses, filed by plaintiff-intervenor Timothy D. Pope, a white employee of the Alabama Department of Corrections who had claimed that he had been denied a promotion because of the no-bypass rule.  For the reasons given below, of Pope's requested $ 105,317.82 for fees and expenses from the state defendants, the court will award $ 61,499.70.

## I.  BACKGROUND

The relevant facts, chronologically, are as follows:

2

<u>May 2002</u>: In order to determine whether the no-bypass rule was still necessary, the state defendants hired statical experts to examine the racial composition of the Alabama workforce as well as the racial patterns of recent selections in the workforce.

<u>February 11, 2003</u>: The state defendants initiated discussions with the United States about the results of the report of the experts.

<u>February 25, 2003</u>: Pope filed a motion to intervene.

<u>March 20 and 27, 2003</u>: The United States filed a motion to hold Pope's intervention motion in abeyance for 45 days, and the motion was granted.

<u>March 20, 2003</u>: The United States and the state defendants filed a joint motion to terminate the no-bypass rule.

<u>May 22, 2003</u>: Representatives of African-American employees of the State of Alabama moved to intervene.

<u>January 20, 2004</u>: Pope and the African-American representatives were all allowed to intervene.

**February 28, 2004**:  Pope filed a complaint-in-intervention and a motion seeking, essentially, to terminate the no-bypass rule.

**March 12, 2004**: The African-American representatives filed a complaint-in-intervention.

**April 29, 2005**: The court entered an order requiring that the parties show cause as to why the motions to terminate the no-bypass rule, filed by the United States, the state defendants, and Pope should not be treated as requests for preliminary relief and why the no-bypass rule should not be preliminary enjoined, that is, suspended.  <u>Flowers I</u>, 372 F.Supp.2d at 1322-25.

**May 9, 2005**: Pope filed a motion for preliminary injunctive relief.

**May 20, 2005**: The court treated the United States and the defendants' joint motion to terminate as a motion for preliminary relief; granted that preliminary-relief motion as well as Pope's preliminary-relief motion; and suspended the no-bypass rule pending final resolution of the challenges to the rule.  <u>Id</u>. at 1325-26

**4**

**June 1, 2005**: Pope filed a motion for award of attorneys' fees as follows:

| ATTORNEYS | RATE | HOURS | AMOUNT |
|---|---|---|---|
| Raymond Fitzpatrick, Jr. | $ 300 | 62.25 | $ 18,675.00 |
| J. Michael Cooper | 225 | 12.00 | 2,700.00 |
| R. Scott Clark | 225 | 141.25 | 31,781.25 |
| Gary L. Brown | 175 | 150.50 | 26,337.50 |
| SUBTOTAL | | | $ 79,493.75 |
| Expenses | | | $ 4,899.90 |
| TOTAL | | | $ 84,393.65 |

**September 9, 2005**: Pope and the state defendants filed motions for summary judgment.

**June 30, 2006**: After substantial discovery, the court entered an opinion and judgment granting the summary-judgment motions, granting the motions to terminate the no-bypass rule, and permanently terminating the rule. **Flowers II**, 444 F. Supp. 2d at 1193-94.

**July 12, 2006**: Pope filed a supplemental motion for award of attorneys' fees as follows:

| ATTORNEYS | RATE | HOURS | AMOUNT |
|---|---|---|---|
| Raymond Fitzpatrick, Jr. | $ 300 | 23.25 | $ 6,975.00 |
| J. Michael Cooper | 225 | 9.75 | 2,193.75 |
| R. Scott Clark | 225 | 7.50 | 1,687.50 |
| Gary L. Brown | 175 | 57.00 | 9,975.00 |
| SUBTOTAL | | | $ 20,831.25[1] |
| Expenses | | | $ 92.92 |
| TOTAL | | | $ 20,924.17 |

Pope is therefore seeking $ 79,493.75 in fees and $ 4,899.90 in expenses in his first motion and $ 20,831.25 in fees and $ 92.92 in expenses in his second motion, for a total sum of $ 105,317.82.

## II. LEGAL STANDARD FOR ATTORNEY'S FEES

In federal civil-rights litigation, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."   42 U.S.C. § 1988(b); see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of

---

1.  In his brief, Pope shows a total fee of $ 20,706.25, but, when the court multiplies the number of hours listed times the rates requested, it gets a total fee of $ 20,831.25, a difference of $ 125.00.

Health & Human Res., 532 U.S. 598 (2001) (statutory fee-shifting provisions from different statutes have been interpreted consistently). "Determining a plaintiff's entitlement to attorney fees entails a three-step process. First, a court asks if the plaintiff has 'prevailed' in the statutory sense. Second, the court calculates the 'lodestar,' which is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area. Finally, the court has the opportunity to adjust the lodestar to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000) (citations omitted).

The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). This burden includes supplying the court with specific and detailed evidence

7

from which it can determine the reasonable hourly rate, maintaining records to show the time spent on the different claims, and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity.  <u>ACLU v. Barnes</u>, 168 F.3d 423, 427 (11th Cir. 1999).

A fee applicant should also exercise "'billing judgment,'" <u>id</u>. at 428 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)).  That is, the applicant should "exclude from his fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours 'that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel.'"  <u>Id</u>. (quoting <u>Norman</u>, 836 F.2d at 1301) (citation omitted).

"Those opposing fee applications have obligations, too.  In order for [district] courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must

be specific and 'reasonably precise.'"   <u>Id</u>. (quoting <u>Norman</u>, 836 F.2d at 1301).

In making the above determinations, the court is guided by the twelve factors set out in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974)[2], and approved in <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 91-92 (1989). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional

_____

2.   In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

relationship with the client; and (12) awards in similar cases.

### III. APPLICATION OF LEGAL STANDARD

The state defendants argue that "Pope is not a 'prevailing party' <u>vis-a-vis</u> [them] because the State [did not] oppose[] Pope's motion to terminate the no-bypass rule." Defendants' memorandum of law (doc. no. 782) at 2. The state defendants explain that they "commenced their work to vacate the no-bypass rule almost a year before Pope sought to intervene in this action," <u>id</u>., and that they, "joined by the United States, aggressively litigated their motion to a successful conclusion." <u>Id</u>.

In <u>Buckhannon Bd. & Care Home, Inc., v. West Virginia Dept. of Health & Human Resources</u>, 532 U.S. 598 (2001), the United States Supreme Court held that a party is a "prevailing party" for fee-shifting purposes if he has achieved a sought-after "judicially sanctioned change in the legal relationship of the parties." 532 U.S. at 600.

10

Here, this court did not grant the United States and the state defendants' joint motion to terminate the no-bypass rule and then deny Pope's termination motion as moot; instead, the court granted both motions.  While Pope may not have achieved the sought-after change by himself, he still achieved it.  Pope is a prevailing party.  This conclusion does not mean, however, as explained below, that he is entitled to all his requested fees.

The first component of the lodestar figure is the number of hours reasonably expended.  To determine this number the court relies primarily on the first <u>Johnson</u> factor, the amount of time and labor required.  The state defendants maintain that most, if not all, of Pope's fees should be denied because his work was unnecessary to the litigation.  The court agrees with the state defendants that to the extent that Pope's participation in this lawsuit was unnecessary or redundant, his time and hours should be reduced.  <u>Cf</u>. <u>Ass'n of Disabled Anericans v. Neptune Designs, Inc.</u>, 469 F.3d 1357, 1360 (11th Cir. 2006) ("Where the factual record supports a finding that

**11**

the plaintiff filed or maintained a suit unnecessarily, a district court may properly consider such a finding in setting the amount of attorneys fees."). Therefore, the critical issue for the court is whether Pope's time and labor were redundant of that expended by the United States and the state defendants, or, to put the issue differently, whether Pope made a separate contribution to the litigation, and, if so, what it was.

First, the state defendants observe that they began their efforts to terminate the no-bypass rule in May 2002. However, it must remembered that, when Pope filed his motion to intervene in February 2003, the rule still applied to him, and, indeed, according to him, he had been, and continued to be, denied promotions because of the rule. He therefore had a <u>live</u> and <u>real</u> dispute with the State at that time. He should not have been expected to wait on the sidelines to see if the state defendants would follow through with their efforts to terminate the rule; moreover, Pope could not be certain that the state defendants would not agree to modify, rather than

**12**

terminate the rule, in the wake of a significant challenge--a challenge which, in fact, came to bear when the African-American representatives intervened. Hindsight might suggest that at some point in the future the outcome of this litigation would have been the same without Pope's presence in this litigation; but foresight, at the time Pope sought to intervene, provided no such certainty. Pope's belief that his presence in this litigation was necessary was reasonable.

Next, the state defendants argue that Pope made the same arguments that they did in support of terminating the no-bypass rule; sought the same relief that they did; and relied on their workforce composition evidence. This argument, essentially, puts at issue whether Pope made any separate contribution to the litigation other than his presence. The court, after revisiting the record in this case, believes that Pope did, albeit to only a limited extent.

In orders entered on April 29 and May 20, 2005, this court stated that, because the no-bypass rule, which had

13

been in effect for approximately 35 years, "is a race-conscious provision and, as such, must meet 'strict scrutiny' standards and must be 'narrowly tailored,' Adarand Constructors, Inc. V. Pena, 515 U.S. 200, 115 S.Ct. 2097 (1995)," Flowers I, 372 F. Supp. 2d at 1323, and, because, "if logic and common sense are to apply, the no-bypass rule cannot be both narrowly tailored and everlasting," id., the rule "cannot continue without a court finding that it continues to meet the demanding requirements for race-conscious relief." Id. With regard to the evidence submitted by the United States and the state defendants, the court stated the "the important question is whether the picture of race-relations in the government of the State of Alabama has reached the critical point where claims of race discrimination can be adequately addressed through traditional federal remedies, such as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17, and the Civil Rights Act of 1866, 42 U.S.C.A. § 1981; the current record strongly suggests that that

14

picture, albeit perhaps a very imperfect one, has reached that point." <u>Flowers I</u>, 372 F. Supp. 2d at 1324.

So as to give the African-American representatives an opportunity to cure the defect, that is, that the rule had not been reviewed and re-authorized by a court during it extended existence, and so as to give them an opportunity to refute the evidence submitted by the United States and the state defendants, the court entered a preliminary injunction that only suspended the rule. <u>Id</u>. at 1325.

On June 30, 2006, relying principally on evidence submitted by the African-American representatives, the United States, and the state defendants, the court entered a final opinion and judgment that concluded that the no-bypass rule, "while narrowly tailored when imposed to redress the State's across-the-board discrimination at that time, is no longer narrowly tailored to redress the specific types of alleged racially discriminatory practices identified by the African-American intervenors today." <u>Flowers II</u>, 444 F. Supp.2d at 1194. "Those

alleged practices may still need fixing," the court
continued, "but the no-bypass rule is no longer one of
the appropriate tools; there is no longer a fit between
the alleged practices and the rule."   Id.   The court
found, among other things, that "the percentage of
African-Americans in 2003 in the state workforce rose to
39; while, at the same time, between 1983 and 2003, the
percentage of African-Americans in the lowest pay-grade
groups decreased from 48 (as opposed to 23 for whites) to
11 (as opposed to 8 for whites), and, in general, there
was a substantial redistribution of African-Americans
into jobs categories with higher, and even the highest,
earning potential.   Thus, all experts agree "that the
percentage of African American employees in the State of
Alabama workforce has increased from 1970 to 2003 and
that the distribution of these employees has changed from
lower skilled positions to higher skilled positions, and
consequently, higher paying, ... categories."   Id. at
1193-94  (footnote  omitted).    The  court  therefore
permanently terminated the rule.   Id. at 1194.

16

Pope's forceful position in this case, that the no-bypass rule was unconstitutional on its face and should be terminated immediately without consideration of any evidence from any of the other parties, played a substantial role in convincing the court that the rule should be suspended early, that is, pending final resolution of the challenges to it. Pope can therefore take substantial, but not total, credit toward the early suspension of the rule. However the court's final termination of the rule, after all evidence had been completed, was driven more by the arguments and evidence of the United States and the state defendants. Pope's contribution to the litigation at this stage was significantly less.

As to Pope's first, June 2005, fee petition, therefore, the court believes that, with exceptions to be discussed in the next paragraph, the hours and labor expended by Pope during the period leading up to the no-bypass rule's suspension are reasonable and should be recovered to the extent of 70 %. The remaining 30 % was

17

redundant of the work done by the United States and the
state defendants.

Two of the exceptions to the amount requested for the
first fee petition are for work done by Pope on (1) the
unsuccessful motion by others to intervene and (2) his
unsuccessful motion for class certification.  This work
was unnecessary, and the fee on his first petition should
be reduced by $ 9,037.50, which reflects the hours spent
on these items.  A third exception is the $ 12,850.00 fee
for the amount of time litigating fees for the first
petition.    While  fees  for  litigating  fees  are
recoverable, Jackson v. State Bd. of Pardons & Paroles,
331 F.3d 790, 799 (11th Cir. 2003), this amount is
excessive when considered in light of Pope's contribution
to the merits of this litigation and when considered for
reasonable in general; it will be reduced by $ 5,000.00.

The court therefore calculates the lodestar for the
first fee petition as follows:

| | |
|---|---|
| Requested amount for non-fee work ($ 79,493.75 - 12,850.00) | $ 66,643.75 |
| Less time for work done on unsuccessful intervention and class certification | -  9,037.50 |
| SUBTOTAL | $ 57,606.25 |
| Less 30 % for redundant work ($ 57,606.25 x .30) | - 17,281.87 |
| SUBTOTAL | $ 40,324.38 |
| Plus the reduced amount for litigating fees ($ 12,850 - 5,000.00) | 7,850.00 |
| TOTAL | $ 48,174.38 |

As to the second, July 2006, fee petition, as the court has stated, Pope's contribution to the litigation at this stage was significantly more limited. In addition, his fees for litigating fees approaches 50 % of the fee petition and is excessive when considered in light of Pope's overall contribution to the merits of this litigation and when considered for reasonableness in light of the total fees for litigating fees in the wake of the state defendants' challenge to the fees. The court will therefore allow him to recover only 40 % of the total amount requested, that is, $ 8,332.50 ($ 20,831.25 x .40). He may recover 10 %, that is, $

19

2,083.13 ($ 20,831.25 x .10), for fees on the merits; he may recover 30 %, that is, 6,249.37, ($ 20,831.25 x .30), for fees for fees.

The <u>Johnson</u> factors as well as the other considerations listed above as part of the legal standard for determining a reasonable fee, to the extent they have not been subsumed in the discussion above, do not warrant an adjustment of the fee petitions. The expenses requested in both fee petitions are reasonable and fully recoverable.

The total amount recoverable in this case is therefore calculated as follows:

| First fee petition | | |
|---|---|---|
| Time and labor | $ 48,174.38 | |
| Expenses | 4,899.90 | |
| SUBTOTAL | $ 53,074.28 | $ 53,074.28 |
| Second fee petition | | |
| Time and labor | $  8,332.50 | |
| Expenses | 92.92 | |
| SUBTOTAL | $  8,425.42 | $  8,425.42 |
| TOTAL | | $ 61,499.70 |

20

Also, the court, looking at the big picture rather than just its parts, concludes that this total fee of $ 61,499.70 is reasonable and should be awarded to Pope from the state defendants.

***

Accordingly, for the above reasons, it is ORDERED that plaintiff-intervenor Timothy D. Pope's motions for award of attorneys fees and expenses (Doc. Nos. 740 & 781) are granted to the extent that plaintiff-intervenor Pope shall have and recover from defendants Tommy G. Flowers, et al., the total sum of $ 61,499.70 for fees and expenses.

DONE, this the 17th day of September, 2007.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE